UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

JEROME M. PUYAU,                              CASE NO.  6:19-CV-1185

        PLAINTIFF                            JUDGE _____

VERSUS

LAURA LEBEOUF; KIBBIE
PILLETTE; DR. DAVID DUPUIS;          MAGISTRATE JUDGE _____
SARA DUPLECHAIN; AND THE
VERMILION PARISH SCHOOL
BOARD;
        Defendants

---

# ORIGINAL VERIFIED COMPLAINT

---

TO THE HONORABLE, THE UNITED STATES DISTRICT COURT IN AND FOR THE WESTERN DISTRICT OF LOUISIANA, LAFAYETTE DIVISION:

    Plaintiff, JEROME M. PUYAU, complaining of Defendants, THE VERMILION

PARISH SCHOOL BOARD (hereinafter referred to as the BOARD) and

LAURA LEBEOUF, KIBBIE PILLETTE, DR. DAVID DUPUIS, SARA DUPLECHAIN,

all individually acting under Color of Law and under color of the statutes, ordinances, regulations, policies, customs and usages of the BOARD, hereby files Plaintiff's Complaint and Jury Demand and respectfully shows the following:

## I.  NATURE OF THE ACTION

1.      This is a civil rights action for injunctive relief, compensatory and punitive damages and attorney fees pursuant to 42 U.S.C. §§1983 and 1988, and the First, Fifth and Fourteenth Amendments to the United States Constitution, and under the laws and constitution of the State of Louisiana.

## II.  DEMAND FOR JURY TRIAL

2.      Plaintiff demands a trial by jury.

## III.  PARTIES

3.      At all times relevant to this Complaint, Plaintiff JEROME M. PUYAU (hereinafter referred to as the SUPERINTENDENT), an individual, was the Superintendent of the Vermilion Parish School District, and resides in Erath, Louisiana and is a citizen of the State of Louisiana, and the United States of America.

4.      At all times relevant to this Complaint, Defendant BOARD was a political body organized under the laws of the State of Louisiana.

5.      At all times relevant to this Complaint, Defendants LAURA LEBEOUF, KIBBIE PILLETTE, DR. DAVID DUPUIS, and SARA DUPLECHAIN were members of the BOARD.

6.      The SUPERINTENDENT sues each and all Defendants, except the BOARD, in their individual capacities.

7.      At all times material to this Complaint Defendants LAURA LEBEOUF, KIBBIE PILLETTE, DR. DAVID DUPUIS, and SARA DUPLECHAIN acted under color of the statutes, customs, ordinances and usage of the State of Louisiana and the BOARD.

## IV.  JURISDICTION

8.      Jurisdiction is founded on 28 U.S.C. §§1331, 1343, 2201, 2202.  Plaintiff further invokes jurisdiction of this Honorable Court under 28 U.S.C. §1367 to adjudicate claims arising under the Laws of the State of Louisiana, including, but not limited to Article 2315, et seq, of the Louisiana Civil Code and Article I, Sections 2, 3, 4 and 23 of the Louisiana Constitution of 1974.

## V.  VENUE

9.      Venue is proper under 28 U.S.C. §1391(b) because one or more Defendants reside in the Western District of Louisiana. Venue is also proper under

28 U.S.C. §1391(b) because all events or omissions giving rise to the claims occurred in the Western District of Louisiana.

# VI.   ACTS 2012, ACT 1

10.    Louisiana school boards, including the BOARD, serve in a policymaking capacity that is in the best interests of all students enrolled in schools under its jurisdiction.  Louisiana Revised Statutes 17:81(A)(1).

11.    Each Louisiana school board, including the BOARD,  must select a president who shall preside at all meetings, call meetings when necessary, advise with and assist the parish superintendent of schools in promoting the success of the schools and do all acts and duties pertaining to the office.  Louisiana Revised Statutes 17:83.

12.    Each Louisiana school board, including the BOARD, must select a local superintendent who is mandated to see that the provisions of the state school law are complied with and who shall have primary responsibility for personnel actions in the school district.  Louisiana Revised Statutes 17:81(A)(2) and (P)(1).

13.    Each Louisiana school board, including the BOARD, is required to elect, by a favorable majority vote of the entire membership of the board, a superintendent of schools for at least two (2) years up to a maximum of four (4) .  Such contract or extension may not be longer than two (2) years after expiration of the term of office

of the school board membership having elected the superintendent.   Louisiana Revised Statutes 17:54(B)(1)(a).

14.   The superintendent shall be employed by the school board pursuant to a written contract which may establish performance targets.  Louisiana Revised Statutes 17:54(B)(1)(b)(i)(aa).

15.   In the event that a superintendent of schools is found to be incompetent, unworthy, inefficient or is found to have failed to fulfill the terms and performance objectives of his contract or to comply with board policy, the superintendent is subject to removal from office for cause prior to the expiration of the contract after receiving written charges and notice of hearing; being provided a fair hearing before the board; and, by the concurring vote of at least two-thirds of the membership of the entire school board.   Louisiana Revised Statutes 17:54(B)(1)(b)(iii) and 17:54(C).

16.   Members of Louisiana school boards, including the BOARD, are prohibited from acting in an individual capacity to use the authority of their office or position as a member of the school board in a manner intended to interfere with, compel, or coerce any personnel decision made by the superintendent including the hiring, promotion, discipline, demotion, transfer, discharge, or assignment of work to any school employee.  Louisiana Revised Statutes 17:81(P)(1).

17.     Each Louisiana school board, including the BOARD, must develop and adopt rules and regulations that, in relevant part, delegate to the superintendent the authority to:

a.      employ teachers, fix their salaries and sign their contracts, Louisiana Revised Statutes 17:81(A)(2) and 17:83;

b.      hire and place all school personnel, Louisiana Revised Statutes 17:81(A)(3);

c.      ensure that all persons hired have proper certification and are qualified for the position, Louisiana Revised Statutes 17:81(A)(3);

d.      make all employment-related decisions based upon performance, effectiveness, and qualifications as applicable to each specific position, Louisiana Revised Statutes 17:81(A)(6);

e.      act on reduction in force decisions, Louisiana Revised Statutes 17:81.4(A); and, among other duties;

f.      do the following:

1.      maintain an office and keep it open during usual office hours, Louisiana Revised Statutes 17:90;

2.      visit as often as possible during the school year each school, Louisiana Revised Statutes 17:91(A);

3.      exert his or her best endeavors in promoting the cause of public education, Louisiana Revised Statutes 17:91(A);

4.      make quarterly reports to the school board, Louisiana Revised Statutes 17:91(B);

5.      keep the minutes of all school board proceedings and perform all acts and duties pertaining to the office of secretary of the school board, Louisiana Revised Statutes 17:91(B);

6.      timely provide an annual financial report to the state Department of education, Louisiana Revised Statutes 17:92;

7.      keep records of all business transacted by him and furnish information to the state superintendent of education, Louisiana Revised Statutes 17:93; and,

8.      administer oaths, Louisiana Revised Statutes 17:94.

18.     Each Louisiana school board, including the BOARD, is required to establish a grievance procedure that will guarantee a fair hearing on grievances by the school board.  Louisiana Revised Statutes 17:100.4.

19.     Each Louisiana school board, including the BOARD, is mandated to adopt and implement a policy establishing procedures for the investigation of any employee in any case in which there is a public announcement by the school board that the employee may be disciplined.  Louisiana Revised Statutes 17:81.8(A).

20.     Article X, Section 25.1 of the Louisiana Constitution of 1974 provides that:

Notwithstanding any provision of this Article to the contrary, the legislature shall provide by general law for the removal of any state, district, parochial, ward, or municipal employee, whether classified or unclassified, from his position of employment, for conviction during his

employment, of a felony as defined by law.  "Conviction", as used in this Section, means a conviction that is final and all appellate review of the original trial court proceedings is exhausted.

## VII.  BOARD POLICIES

21.    On June 18, 2015, the BOARD adopted Policy BBBA.  (Plaintiff's Ex. No. 1 or PEN 1).  Individual members of the BOARD shall have authority only when acting as a school board legally in session.  Policy BBBA also prohibited any BOARD member from exercising any administrative responsibility or as an individual command the services of any school employee.

22.    According to BOARD Policy BBG, "School Board Operating Protocol" also adopted June18, 2015, "The School Board will emphasize planning, policy-making and public relations, rather than becoming involved in the management of the schools." (PEN 2).  Furthermore, Policy BBG recognized the SUPERINTENDENT as the chief executive officer and that each individual board member lacked any authority.  Finally, all personnel complaints and criticisms received by the BOARD or its individual members will be directed to the SUPERINTENDENT.

23.    On September 23, 2015, the BOARD adopted a Policy BD which is a statement of the BOARD's policies.  ( PEN 3).  The formulation and adoption of BOARD policies was to be the primary method through which the BOARD exercised its leadership.

24.     On November 30, 2015 Policy CB was revised.  (PEN 4).  The BOARD delegated to the SUPERINTENDENT the authority and responsibility for the efficient administration of the school system.   As the chief executive officer, the SUPERINTENDENT is to discharge his duties as prescribed by the Louisiana Constitution, statutes and BOARD policies.  The SUPERINTENDENT is also the Secretary and Treasurer of the BOARD.   Policy CB also mandated that the SUPERINTENDENT was to maintain his office at the BOARD's office building and keep it open during the week except for holidays to receive reports of teachers and others and to transact business.

25.     On January 21, 2016 the BOARD adopted Policy GAE.  (PEN 5).  Policy GAE set forth a six-level review process for complaints and grievances by a teacher, group of teachers, other school employees or group of employees.   Any complaint or grievance that proceeds past the first level must be written.  In the event the initial grievance is brought against the SUPERINTENDENT, the hearing and recommendation shall be made by a hearing officer chosen at random.  Once the hearing officer has made a recommendation, the BOARD has thirty days in which to vote to affirm, reverse or modify the decision.  Absent a motion and second to modify or reverse the hearing officer's decision, the decision shall stand and be final.

26.     Policy KE, adopted July 20, 2016 and revised July 18, 2018, provides that public complaints and concerns are to be referred to the principal or designee of the school for study and possible solution.    (PEN 6).  If the complaint could not be resolved through the administration, the BOARD would consider hearing the complaint.  The complaint must be written, be specific in terms of the action desired and submitted to the BOARD through the SUPERINTENDENT.  The BOARD cannot consider complaints that have not been considered at the appropriate administrative level.

## VIII.   ALLEGATIONS OF FACT

27.     On December 21, 2012, the SUPERINTENDENT and the BOARD entered into a contract of employment commencing January 24, 2013 and ending January 24, 2017.  (PEN 7).

28.     Section 2(B) of the December 21, 2012 Contract delineated the duties to be performed by the SUPERINTENDENT.  The SUPERINTENDENT was charged with the administration of the Vermilion Parish school district which included executing the decisions and mandates of the BOARD; directing and assigning school personnel; organizing the administrative staff to best serve the needs of the school district; make recommendations regarding rules, regulation and procedures; perform all duties incident to the office of superintendent; and, perform all duties prescribed by

the laws of the State of Louisiana, the Louisiana Department of Education or the BOARD.

29.    The December 21, 2012 Contract also set forth performance objectives for the SUPERINTENDENT, required him to devote his full time, attention and energy to the business of the Vermilion Parish School system and provided compensation and vacation leave time.

30.    Section 7 of the December 21, 2012 Contract set forth the terms and conditions of its termination.  The contract was subject to termination by (A) mutual agreement of the parties; (B) the SUPERINTENDENT'S retirement; (C) the SUPERINTENDENT'S disability; and (E) the SUPERINTENDENT'S  death, interdiction or indictment or conviction of a felony.  Section (C) further provided that in the event of the incapacity of the SUPERINTENDENT , after he has exhausted all sick leave and such other available leave and has been absent from his employment for whatever cause for 90 continuous days, the BOARD may terminate the contract.

31.    Section 7(D) of the Contract also included provisions governing the termination of the employment contract for cause pursuant to Louisiana Revised Statutes 17:54(C).

32.     During the first two years of the December 21, 2012 Contract, the SUPERINTENDENT experienced no hostility from the members of the BOARD.

33.     However, in January 2015, LAURA LEBEOUF assumed office as a member of the BOARD.   She joined KIBBIE PILLETTE who sat on the BOARD. SARA DUPLECHAIN and DAVID DUPUIS would be chosen to serve on the BOARD.

34.     Prior to assuming a seat on the BOARD, LAURA LEBEOUF was employed as the principal of Kaplan High School located in Kaplan, Louisiana.  On December 10, 2013, LEBEOUF filed an incident report claiming that the SUPERINTENDENT and Dr. James Gray were trying to remove her from her position and demanded an investigation. (PEN 8).  LEBEOUF openly referred to the SUPERINTENDENT in derogatory terms such as "Hitler" or "Nazi".  (PEN 9).

35.     On September 15, 2015, the SUPERINTENDENT received notification from the Louisiana Department of Education that the 2011-2012 graduation index cohort for Kaplan High School was not correct and had to be recalculated.   (PEN 10). LAURA LEBEOUF was the principal at Kaplan High School during the 2011- 2012 school year and was believed to be the last person to have access to data as reported to the Department of Education.

36.    Notwithstanding the clear language of Act 1 and BOARD policy, some members of the BOARD began to question the authority of the SUPERINTENDENT to hire legal counsel.  The BOARD adopted, on June 18, 2015, a policy that it provided for the discretionary selection and employment of  its own general counsel. (PEN 11).  However, on July 20, 2016, the BOARD adopted a policy that delegated to the SUPERINTENDENT responsibility for selecting for employment all persons, whether teachers, administrative, supervisory or support, to be hired.  (PEN 12).

37.    On May 5, 2017 and on July 10, 2017, Calvin E. Woodruff, Jr., Legal Counsel/Risk Manager for the Vermilion Parish school system, issued opinions in response to requests from BOARD members.  (PEN 13 & 14).  In each opinion the conclusion was that the SUPERINTENDENT, a constitutional school officer as provided by the constitution and laws of the State of Louisiana, was responsible for making all decisions with respect to hiring personnel.

38.    As a member of the BOARD, LAURA LEBEOUF has waged a campaign of reprisal and personal attacks against the SUPERINTENDENT.  On September 7, 2016, during the term of the December 12, 2012  contract, Anthony Fontana, then president of the BOARD, rejected a request by LEBEOUF to declare an opening for the position of superintendent.  (PEN 15).

39.    On October 20, 2016, LEBEOUF moved to deny renewal of the SUPERINTENDENT'S contract.  A second to the motion was made by PILLETTE. (PEN 16).  Because the eight-member board split on the vote, the motion failed.

40.    On December 22, 2016, prior the expiration date of his contract, the SUPERINTENDENT submitted a request for a new contract in order to initiate discussions regarding BOARD approval of a new contract.  (PEN 17).

41.    During the January 19, 2017 meeting of the BOARD, a motion was made to approve the renewal of the SUPERINTENDENT'S contract.  (PEN 18).  Once again, the eight members of the BOARD could not agree and split on the question. Consequently, the motion failed to pass.

42.    With respect to the matter of hiring school board personnel, the Attorney General for the State of Louisiana issued, on July 27, 2017, Opinion 16-0208. (PEN 19).  Noting that Act 1 withdrew from a school board the discretionary power to hire employees and moved the authority to hire all school personnel to the superintendent, the Attorney General concluded that even if the school board delayed consideration or failed to act on an employment contract, the superintendent would not be precluded from hiring an employee.

43.   On January 10, 2018, nearly one year after the expiration of the original

contract, the BOARD and the SUPERINTENDENT entered into a new contract.

(PEN 20).  The new contract set forth specific duties, performance standards and, in

relevant part, once again provided for the removal of the SUPERINTENDENT for

cause pursuant to Louisiana Revised Statutes 17:54(C).

44.   The new contract also provided that the SUPERINTENDENT shall:

a.   have charge of the administration of the school district;

b.   execute all legal decisions and mandates of the BOARD;

c.   direct and assign teachers and other employees of the schools under his supervision;

d.   organize, reorganize and arrange the administrative and supervisory staff, including instruction and business affairs, as best serves the needs of the school district;

e.   from time to time suggest regulations, rules and procedures deemed necessary for the well ordering of the school system;

f.   perform all duties incident to the office of the SUPERINTENDENT and such other duties as prescribed by Louisiana law and Louisiana Department of Education or BOARD regulations;

g.   attend all BOARD meetings and all committee meetings unless specifically advised otherwise or excused by the BOARD President or Vice-President; and,

h.   when requested, provide recommendations on each item of business.

45.   The new contract also imposed specific performance objectives to be implemented by the SUPERINTENDENT.  These performance objectives required the SUPERINTENDENT to:

a.   oversee the day-to-day operations of the school district and strive to employ methods that make efficient use of district resources;

b.   work with individuals, groups and committees to ensure that schools are safe and productive;

c.   propose facility improvements when warranted and use technology to enhance professional practices and productivity;

d.   function as the primary instructional leader of the district;

e.   involve staff, as needed, in instructional planning, and demonstrate professional skills in the implementation of district-wide instruction;

f.   plan, implement, support and assess instructional programs that enhance teaching and student achievement, oversee revisions in curriculum, assess effects of programs and curriculum on student achievement, and provide resources to accomplish instructional goals;

g.   develop a plan for the effective allocation of fiscal resources and effectively manage the budget, oversee presentation of budget to the BOARD, and collaboratively establish priorities for budgeting and effective allocation of resources;

h.   communicate and support a clear vision of excellence and continuous improvement and celebrate excellence of staff and students;

i.   endeavor to select and retain quality instructional and support staff, oversee the recruitment and will assign personnel and, provide support to improve staff performance;

j.   provide staff development programs consistent with instructional improvement plans, support staff participation in professional development activities and will evaluate the effectiveness of the professional development plan;

k.   promote effective communication and interpersonal relations within the school, be accessible to staff, model appropriate communication skills, promote a climate of trust and maintain visibility among staff;

l.   maintain effective channels of communication with board members and the community, strive to build and maintain community support, work with local media, and serve as the liaison for communications between the Board and personnel; and,

m.   model professional, moral and ethical standards as well as personal integrity and maintain a professional demeanor and demonstrate good character.

46.   The new contract provided the SUPERINTENDENT with a base salary equivalent to an index of 2.5 times that pay he would receive as a teacher. Additionally, his salary had to be increased by 1% each year for each of three performance targets met by the SUPERINTENDENT in the preceding school year.

The performance targets are: 1) to improve student achievement by increasing the District Performance Score by at least two (2) points; 2) to improve student achievement by increasing the percentage of students scoring eighteen (18) or better on the ACT; and, 3) to improve the high school graduation rate by at least one (1) percent.  The salary increases based upon the performance targets were to begin in January 2019.

47.    The new contract provided that in the event of the SUPERINTENDENT's disability by illness or incapacity, the "BOARD may terminate this contract by written notice to SUPERINTENDENT at any time after SUPERINTENDENT has exhausted any accumulated sick leave and such other leave as may be available and has been absent from his employment for whatever cause for an additional continuous period of 90 days."

48.    On August 6, 2018, the BOARD approved two resolutions to hire an attorney to file suit against the SUPERINTENDENT to obtain a declaratory judgment as to the power to hire special counsel.   (PEN 21).

49.    On August 6, 2018 the BOARD, without authority and without notice and opportunity to be heard, voted, on the third motion by KIBBIE PILLETTE and

seconded by LAURA LEBEOUF, to place the SUPERINTENDENT on administrative leave with pay.

50.     On August 13, 2018, the BOARD, meeting as a committee of the whole, discussed the procedures for investigating the SUPERINTENDENT.  (PEN 22).  The same day, the Policy Review Committee of the BOARD met to discuss revisions of all policies concerning the duties of the SUPERINTENDENT.  (PEN 23).  On August 16, 2018, the BOARD appointed a committee, consisting of DAVID DUPUIS, BOARD president Jean Broussard and Legal Counsel/Risk Manager Kathy Boudreaux, to investigate the allegations asserted against the SUPERINTENDENT.  (PEN 23A).

51.     By letter dated August 24, 2018, Mr. Stacy Landry, then president of the BOARD, advised the SUPERINTENDENT that the BOARD had randomly selected Mr. Edward Abell, Jr., to conduct the hearing.  (PEN 24).

52.     The BOARD was to consider a resolution dated September 6, 2018.  (PEN 25). According to the September 6, 2018 resolution, which was not adopted by the BOARD, the SUPERINTENDENT was to be placed on administrative leave, with pay and benefits, and relieved of the duties and responsibilities of his office.

53.     Additionally, the SUPERINTENDENT was directed to not:

        a.     enter any premises owned by the BOARD;

     b.     perform any of the duties incumbent on a superintendent including the hiring, placement or termination of any employee;

     c.     attend any meeting of the BOARD or any committee;

     d.     attend any meeting wherein it is anticipated that an employee intends to make accusations against the Superintendent;

     e.     use any BOARD electronic equipment; and,

     f.     perform any other function on behalf of the BOARD;

54.     The September 6, 2018 resolution also provided that the SUPERINTENDENT was to:

     a.     remain at home during business hours of the BOARD;

     b.     make himself available for questioning; and,

     c.     immediately return all electronic equipment.

55.     Finally, the September 6, 2018 resolution provided that should the Superintendent violate any of the foregoing directives, such violation would constitute cause for termination of his employment.

56.     On September 7, 2018, a hearing was conducted by Mr. Abell who had been selected as the administrative hearings officer by the BOARD.  (PEN 26).   On September 14, 2018 Mr. Abell rendered his judgment and found in favor of the SUPERINTENDENT. (PEN 27). Mr. Abell, after considering the evidence, and noting

the hostility of some of the BOARD members toward the SUPERINTENDENT, determined that the BOARD acted arbitrarily, capriciously and without cause in suspending the SUPERINTENDENT.   Mr. Abell concluded that the SUPERINTENDENT should be immediately restored to his office.

57.     On September 12, 2018 a member of the BOARD was advised by an attorney, Dannie P. Garrett, III, that there was no statutory authority for the BOARD to have placed the SUPERINTENDENT on paid or unpaid administrative leave.  (PEN 28).

58.     During the September 17, 2018 meeting of the BOARD, and notwithstanding the ruling of the hearings officer, DAVID DUPUIS moved to approve a resolution to ratify and reimpose the suspension of August 6, 2018.  KIBBIE PILLETTE provided a second to the motion.  However, the motion failed due to a tie vote of the BOARD membership.  (PEN 29).

59.     During the BOARD meeting of September 20, 2018, the BOARD considered a motion to return the SUPERINTENDENT to his position.  (PEN 30).  Although there exists no authority for the BOARD to suspend the SUPERINTENDENT, LAURA LEBEOUF, SARA DUPLECHAIN, KIBBIE PILLETTE and DAVID DUPUIS voted against the measure.  However, the BOARD  modified the suspension resolution to permit the SUPERINTENDENT, as a parent of a Vermilion Parish

student, to attend any and all functions and events occurring on school property and involving his daughter.

60.     The BOARD failed to timely seek review of the decision of the administrative hearing officer.   Consequently, the decision of the hearing officer became final and the SUPERINTENDENT timely resumed his duties as the superintendent of Vermilion Parish School District.

61.     Since 2013 the SUPERINTENDENT  has been named as a defendant in seven suits, five of which were instituted either by the BOARD or LAURA LEBEOUF.  (PEN 31).  On November 20, 2018, four members of the BOARD, LAURA LEBEOUF, KIBBIE PILLETTE, SARA DUPLECHAIN AND DAVID DUPUIS, acting as members of the BOARD but without BOARD approval, filed suit in state district court for declaratory and injunctive relief.  See *Laura Lebeouf, et al. v. Jerome M. Puyau*, Case No. 105,933 Division A, 15th JUDICIAL DISTRICT COURT for the Parish of Vermilion.  (PEN 32).  The four, without BOARD approval, sought an order from the district court declaring that the BOARD acted within its authority when it placed the SUPERINTENDENT on administrative leave.

62.     The SUPERINTENDENT timely responded to the state court petition.  On July 10, 2019, that suit was dismissed with prejudice.  (PEN 33).

63.     Meanwhile, the acrimony directed towards the SUPERINTENDENT by LEBEOUF, PILLETTE, DUPLECHAIN and DUPUIS increased in severity.  (PEN 34). During a committee hearing conducted on Monday, October 15, 2018, Duplechain accused the SUPERINTENDENT of insubordination by failing to hire a person to serve as director of child welfare and attendance.

64.     Notwithstanding the written findings of Mr. Abel that virtually none of the members of the public or BOARD employees followed the appropriate grievance procedures and thus were eliminated by application of the BOARD's policies, LEBEOUF, PILLETTE and DUPUIS asserted the information provided by complaining parties was confidential and should only have been provided a neutral party.  (PEN 35).   Moreover, their public pronouncements asserted that the proceeding before a hearing officer was an act of deception and many laws continue to be broken.  The three wrote that incompetence and corrupt policies are not acceptable for an educational system and "[w]e can no longer allow the Puppetmaster to control the strings of our system."

65.     By letter dated February 18, 2019 and addressed to each member of the BOARD, the Legal Counsel/Risk Manager, Kathy S. Boudreaux, advised the members against placing an item, that is the hiring of an attorney to investigate complaints

against the SUPERINTENDENT, without first obtaining written charges that have been subjected to administrative resolution and notice provided the SUPERINTENDENT.  (PEN 36).

66.    On July 25, 2019, the BOARD once again, without authority and without providing notice and an opportunity for a hearing, placed the SUPERINTENDENT on administrative leave pending an investigation. (PEN 37).

As conditions of his suspension, the SUPERINTENDENT is:

a.    prohibited from performing any duty incumbent upon the superintendent of schools, including, but not limited to, the hiring, firing, placement, or termination of any employee;

b.    prohibited from entering any premise or property owned or operated by the BOARD;

c.    prohibited from administratively accessing, modifying, or amending any electronic information owned by the BOARD;

d.    prohibited from communicating with anyone, including, but not limited to BOARD employees and the media on behalf of the BOARD or the school system; and,

e.    prohibited from retaining any and all BOARD property; and,

f.    to cooperate with the BOARD's special counsel in the course of the investigation and disclose all documents and other materials used or produced in the course of his employment.

67.    On the same day, the BOARD issued a resolution to retain counsel to conduct an investigation of the SUPERINTENDENT.   (PEN 38).  According to the resolution, serious matters concerning the SUPERINTENDENT had come before the BOARD, including but not limited to, his 1) failing to put items on the agenda; 2) failing to acknowledge and implement BOARD action on May 30, 2019 to eliminate the position of Risk Manager/Legal Counsel (in effect terminate the person holding that position); 3) failing to acknowledge and implement BOARD action on May 30, 2019 to name the law firm of Hammonds, Sills, Adkins and Guice as Board General Counsel and to direct all legal matters concerning the school system be referred to that firm for handling; 4) hiring administrative personnel who do not meet the qualifications outlined in the BOARD approved job description; 5) authorizing the payment of private attorney fees with BOARD funds without knowledge or approval of the BOARD; and, 6) any other matters that should be discovered through a thorough investigation of these and other matters.

By letter dated July 25, 2019, Lebeouf advised the SUPERINTENDENT of the conditions of his suspension.  (PEN 39)

68.    Although termed by the BOARD as "administrative leave with pay" the BOARD has effectively stripped the SUPERINTENDENT of his statutory authority to act as

chief executive officer of the Vermilion Parish School District, removed him from office, commanded he not speak to school board employees, remain off school board property and have otherwise violated his contract by denying to him an opportunity to meet his performance objectives and targets.  The BOARD has imposed punitive measures predicated on the basis of charges levied against the SUPERINTENDENT for which he was not provided with notice and an opportunity to be heard.

69.    A majority of the BOARD has authorized the filing of another lawsuit to remove the SUPERINTENDENT from his office.   Since March 8, 2018 the SUPERINTENDENT has had five suits instituted against him in the 15th Judicial District Court, Parish of Vermilion.   In responding to the many lawsuits instituted against him the SUPERINTENDENT has incurred legal fees in excess of $50,000.00.

70.    At all times material herein, LAURA LEBEOUF, KIBBIE PILLETTE and DAVID DUPUIS have demonstrated open hostility toward the SUPERINTENDENT. LAURA LEBEOUF had been removed as principal of Kaplan High School by the SUPERINTENDENT because of a lengthy period of disability.

71.    The SUPERINTENDENT had refused to alter job descriptions and refused to hire KIBBIE PILLETTE'S wife and LAURA LEBEOUF's husband.  Finally, the

SUPERINTENDENT had refused to hire DAVID DUPUIS as an Assistant Superintendent.

72.     LAURA LEBEOUF has openly stated that the SUPERINTENDENT has been removed from his office and is no longer considered superintendent of the Vermilion Parish School District.  As president of the BOARD, LAURA LEBEOUF refuses to allow the SUPERINTENDENT  to comment on matters coming before the BOARD. If he speaks to the BOARD the SUPERINTENDENT  can only speak as a citizen of Vermilion Parish and not as superintendent.

73.     KIBBIE PILLETTE has also objected to the SUPERINTENDENT maintaining his office during the periods of suspension.  More recently, KIBBIE PILLETTE has called for the arrest of the SUPERINTENDENT for maintaining his position and has asserted that the SUPERINTENDENT has committed a trespass on school board property.

74.     As a result of the actions of the BOARD, LAURA LEBEOUF, KIBBIE PILLETTE, DAVID DUPUIS AND SARA DUPLECHAIN, the SUPERINTENDENT'S professional reputation has been irreparably damaged such that he can no longer compete for other positions with other school districts.  The

SUPERINTENDENT  was told by a member of a school board for another Parish that it would be political suicide to hire him as superintendent.

75.     As a result of the actions of the BOARD, LAURA LEBEOUF, KIBBIE PILLETTE, DAVID DUPUIS and SARA DUPLECHAIN, the SUPERINTENDENT  has been threatened with physical injury, accused of criminal activity and held up for public humiliation.  Consequently, he has sustained severe emotional injury to himself and injury to his marital relations.

## IX.   SUCCESSES

76.     Even though targeted for termination by the BOARD, LAURA LEBEOUF, KIBBIE PILLETTE, DAVID DUPUIS and SARA DUPLECHAIN, the SUPERINTENDENT has continued with his efforts to improve the Vermilion Parish School District.  In 2019 the Louisiana Department of Education (DOE) recognized outstanding school systems that demonstrated growth in percentage of students achieving "top growth" targets, individualized to each child.  The Vermilion Parish School District was ranked the number two (2) district in the State of Louisiana.

77.     When examining subgroups for African American students, the Vermilion Parish School District is ranked number one (1) in the State of Louisiana.

| "2019 Outstanding School Systems" | | | | | |
|---|---|---|---|---|---|
| School System | 2019 % Top Growth | 2019 % Top Growth Ranking | School System | 2019 % Mastery | 2019 % Mastery Ranking |
| Ascension Parish | 54 | 1 | Ascension Parish | 57 | 1 |
| Vermilion Parish | 53 | 2 | Vermilion Parish | 54 | 2 |
| Lafourche Parish | 53 | 2 | Lafourche Parish | 51 | 3 |

| Outstanding School Systems: African American Students | | | | | |
|---|---|---|---|---|---|
| School System | 2019 % Top Growth | 2019 % Top Growth Ranking | School System | 2019 % Mastery | 2019 % Mastery Ranking |
| Vermilion Parish | 50 | 1 | Ascension Parish | 39 | 1 |
| St. James Parish | 50 | 1 | St. James Parish | 35 | 2 |
| Ascension Parish | 50 | 1 | Vermilion Parish | 30 | 3 |

| Outstanding School Systems: Economically Disadvantaged Students | | | | | |
|---|---|---|---|---|---|
| School System | 2019 % Top Growth | 2019 % Top Growth Ranking | School System | 2019 % Mastery | 2019 % Mastery Ranking |
| Vermilion Parish | 52 | 1 | Vermilion Parish | 24 | 1 |
| Lafourche Parish | 52 | 1 | Lafourche Parish | 16 | 2 |
| Central Comm. District | 51 | 2 | Central Comm. District | 16 | 3 |

| Outstanding School Systems: Students with Disabilities | | | | | |
|---|---|---|---|---|---|
| School System | 2019 % Top Growth | 2019 % Top Growth Ranking | School System | 2019 % Mastery | 2019 % Mastery Ranking |
| Vermilion Parish | 52 | 1 | Vermilion Parish | 24 | 1 |
| Lafourche Parish | 51 | 2 | Lafourche Parish | 16 | 2 |
| Central Comm. District | 51 | 2 | Central Comm. District | 16 | 3 |

78.    When considering the subgroup of students with disabilities, the Vermilion

Parish School District is ranked number one (1) in the State of Louisiana.

79,    When considering the economically disadvantaged students subgroup, the Vermilion Parish School District is ranked the number one (1) district in the State of Louisiana.

80    The charts below set out the progress of the Vermilion Parish School District upon the SUPERINTENDENT'S assumption of the position of Interim Superintendent on July 1, 2011 preceding his assumption of the position of Superintendent on January 22, 2012.





Vermilion Parish Graduation Rate and State Average Graduation Rate

# X.  ANOTHER SUIT

81.   When informed on July 25, 2019, that he was being suspended the SUPERINTENDENT, recognizing that the BOARD could conduct an investigation, refused to cede his office to the BOARD because the BOARD lacked authority suspend or otherwise place him on "administrative leave" whether with pay or without.  The SUPERINTENDENT maintained his office and remained in charge of the Vermilion Parish School District.

82.    On August 23, 2019, a complaint was filed in which the BOARD named the SUPERINTENDENT as the defendant.   *Vermilion Parish School Board v. Jerome Puyau in his Capacity as Superintendent of the Vermilion Parish School Board,*  Case No. C-107177 , 15th Judicial District Court for the Parish of Vermilion, State of Louisiana.   The SUPERINTENDENT received a copy on September 6, 2019. PEN 40. 83.       Alleging that the SUPERINTENDENT "* * * continued to be present daily at the School Board central office and to act as the Superintendent in direct contravention of the School Board's lawful directive that he refrain from such activities" and "by interfering with the administrators to whom the job duties of the Superintendent has been delegated in the interim," the BOARD seeks the issuance of a temporary restraining order and preliminary injunction to prevent the SUPERINTENDENT from carrying out the duties and responsibilities of his office.

84.    Article X, Section 25.1 of the Constitution of the State of Louisiana provides that the legislature shall provide by general law for the removal of any state, district, parochial, ward, or municipal employee from his position of employment for the conviction of a felony that is final and all appellate review of the original trial court proceedings have been exhausted.

85.     The Legislature of the State of Louisiana has met its constitutional mandate and enacted a process through which a public officer can be removed from office by suit.  See Louisiana Revised Statutes 42:1411.  Section 1411(A) provides that "[a] public officer shall be removed from office for conviction, during his term of office, of a felony."   Section 1411(B) provides for the automatic suspension without compensation of the public officer upon conviction.  Section 1411(C) provides that during the suspension, another person shall be appointed to perform the official acts, duties and functions of the office during the period of suspension.

86.     The SUPERINTENDENT has not been convicted of a felony.  Nevertheless, the BOARD and those members who have voted to suspend him and have assigned his job duties to others.   By doing so, the BOARD and members have denied the SUPERINTENDENT his rights under his contract, denied him  due process and have abused the judicial process by utilizing a system reserved for the suspension of public officers convicted of a felony.

87.     A state district court judge has denied the BOARD's application for a temporary restraining order.  The application for a preliminary injunction has been scheduled for 10:00 a.m., September 17, 2019.

# XI.  INJUNCTIVE RELIEF

88.    Because of the demonstrated hostility and bias of LAURA LEBEOUF, KIBBIE PILLETTE and DAVID DUPUIS to the SUPERINTENDENT having served and continuing to serve as superintendent of the Vermilion Parish School District the SUPERINTENDENT has not received and cannot receive a hearing before a fair and impartial tribunal.  Neither of the three defendants has functioned nor will they function as an impartial adjudicator who has not already prejudged the SUPERINTENDENT.  Consequently, their past and present participation in the actions of the BOARD to remove the SUPERINTENDENT from his office violate his due process rights and their continued participation in proceedings against the SUPERINTENDENT will inflict irreparable injury to the SUPERINTENDENT.

89.    The continued participation of LAURA LEBEOUF, KIBBIE PILLETTE and DAVID DUPUIS in efforts to remove the SUPERINTENDENT from his office and the threat of injury to the SUPERINTENDENT's reputation and his ability to procure comparable employment constitute an irreparable injury to the SUPERINTENDENT.

90.    The suspensions of the SUPERINTENDENT were imposed without authority and in derogation of the SUPERINTENDENT'S due process rights.

91.     Injunctive relief, by way of a temporary restraining order, as well as preliminary and permanent injunctions, should issue prohibiting LAURA LEBEOUF, KIBBIE PILLETTE and DAVID DUPUIS from participating in any matter coming before the BOARD and involving the SUPERINTENDENT.

92.     The conditions imposed upon the SUPERINTENDENT by the BOARD are punitive and, without notice and hearing, strip him of his contractual and statutory rights and duties to administer the Vermilion Parish School District as chief executive officer.   If the BOARD, LAURA LEBEOUF, KIBBIE PILLETTE and DAVID DUPUIS, acting separately or in concert with each other, can deny to the SUPERINTENDENT his right to perform the duties of his office as provided by state law and his employment contract, and thereby incapacitate the SUPERINTENDENT for a period of 90 continuous days, the SUPERINTENDENT faces the possibility of termination.

93.     Injunctive relief, by way of a temporary restraining order as well as preliminary and permanent injunctions, should issue prohibiting the BOARD from interfering with the performance of duties and obligations imposed upon the SUPERINTENDENT by state law and his contract.  The BOARD has been advised that it lacks authority to suspend the SUPERINTENDENT and has been found to

have acted arbitrarily, capriciously and without cause with respect to the first suspension of August 6, 2018.

## XII. CLAIMS

### COUNT ONE
### First Amendment and Due Process Fourteenth Amendment
### 42 U.S.C. § 1983

94.     The SUPERINTENDENT repeats and re-alleges all of the paragraphs in this Complaint as if fully set forth herein.

95..    Suspension was not authorised by state statute or contract. The Fourteenth Amendment to the United States Constitution provides for a right of procedural due process and prohibits the deprivation of property and liberty without due process.

96.     The Employment Contracts entered into on December 21, 2012 and January 10, 2018, gave the SUPERINTENDENT a protectable property interest within the meaning of the Fourteenth Amendment to the United States Constitution 42 U.S. § 1983 in his continued employment as the Superintendent of the School District.

97.     The SUPERINTENDENT has a present entitlement to his position as the Superintendent for the School District by virtue of his Employment Contract entered into on January 10, 2018.

98.     Suspension was not authorised by state statute or contract.  Nevertheless, to the extent the BOARD unilaterally decided to strip the SUPERINTENDENT of his statutory and contractual powers he was entitled to receive a due process hearing in compliance with the Constitution of the United States, U.S. Const. Amend XIV § 1.

99.     The SUPERINTENDENT was denied his right to receive a fair hearing, as required by law, by not allowing him adequate notice of the charges against him or a fair opportunity to be heard, included the opportunity to present evidence, call witnesses, and otherwise testify on his own behalf.

100.    The actions of the BOARD, LAURA LEBEOUF, KIBBIE PILLETTE, DAVID DUPUIS AND SARA DUPLECHAIN were taken under color of law and deprived The SUPERINTENDENT of a protective property and liberty interest in his employment as the Superintendent of the School District without affording him due process rights to a fair and impartial hearing, in violation of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

101.    On August 6, 2018 and continuing until his return to work in November 2018 and again on July 25, 2019 and continuing to date, the BOARD, without legal authority, suspended the SUPERINTENDENT and prohibited him from performing any duties imposed by state law and his contract of employment as superintendent of the Vermilion Parish School District.   Among the punitive conditions of his suspension, the SUPERINTENDENT was prohibited from communicating with anyone on behalf of the BOARD or the school system.   Additionally, he was prohibited from entering onto Board property, stripped of his electronic devices, keys and other access devices, and ordered to cooperate with a special counsel employed by the BOARD to conduct an investigation.

102.    These conditions imposed by the BOARD and those biased members voting to suspend the SUPERINTENDENT, LAURA LEBEOUF, KIBBIE PILLETTE and DAVID DUPUIS, have infringed the SUPERINTENDENT's first amendment rights of free speech and association.   He remains superintendent of the Vermilion Parish School District and is the chief executive officer of the school system.

103.    The conditions imposed by the BOARD and those biased members voting to suspend the SUPERINTENDENT, LAURA LEBEOUF, KIBBIE PILLETTE and DAVID DUPUIS are punitive, restrict the ability of the SUPERINTENDENT to carry

out his duties as chief executive officer of the school district, imposed without notice

and an opportunity to be heard, and violate the due process rights of the

SUPERINTENDENT.

## COUNT TWO
### (Deprivation of Property Interest -Violation of the Fourteenth Amendment to the U.S. Constitution) 42 U.S.C. § 1983

104.   The SUPERINTENDENT repeats and re-alleges all of the paragraphs in this

Complaint as if fully set forth herein.

105.   The cumulative effect of the actions of the BOARD and LAURA LEBEOUF,

KIBBIE PILLETTE, DAVID DUPUIS and SARA DUPLECHAIN  has been to damage

and defame his reputation.  Attempts to find employment as superintendent with

other school districts have been met with failure due to the actions of the defendants.

Consequently, his constitutionally protected due process rights in his profession

have been violated.

106.   The SUPERINTENDENT was stigmatized by the untrue statements made

against him, and he was stigmatized in a manner that damaged his professional

reputation and, by hurting his good name, personal reputation, honor and integrity.

107.   The SUPERINTENDENT suffered a tangible loss of other employment opportunities as a result of the public disclosure.

108.   By their actions, the BOARD,  LAURA LEBEOUF, KIBBIE PILLETTE,  DAVID DUPUIS, and SARA DUPLECHAIN deprived the SUPERINTENDENT of his liberty interests without due process of law, in violation of the Fourteenth Amendment of the United States Constitution.

109.   That as a direct and proximate result of the foregoing conduct, the SUPERINTENDENT sustained the loss of certain economic benefits derived through his position of employment as well as his subsequent inability to secure employment. Additionally, he has suffered emotional pain and anguish, damage to his reputation, embarrassment and humiliation, inconvenience and the loss of enjoyment of life.

## COUNT THREE
## Malicious Prosecution
## Louisiana Civil Code Article 2315

110.   The SUPERINTENDENT repeats and re-alleges all of the paragraphs in this Complaint as if fully set forth herein.

111.   The tort of malicious prosecution has six essential elements: "(1) The commencement or continuance of an original criminal or civil judicial proceeding.

(2) Its legal causation by the present defendant in the original proceeding. (3) Its bona fide termination in favor of the present plaintiff. (4) The absence of probable cause for such proceeding. (5) The presence of malice therein. (6) Damage conforming to legal standards resulting to plaintiff. . . ." *Lees v. Smith*, 363 So.2d 974, 978 (La.App. 3d Cir. 1978).

112.   The state court suit filed against SUPERINTENDENT PUYAU by LAURA LEBEOUF, KIBBIE PILLETTE, DAVID DUPUIS and SARA DUPLECHAIN, *Laura Lebeouf, et al. v. Jerome M. Puyau*, Case No. 105,933 Division A, 15th JUDICIAL DISTRICT COURT for the Parish of Vermilion. was filed without BOARD authorization. The SUPERINTENDENT timely responded and sought dismissal of the action.  The suit was dismissed with prejudice on the motion of the four.

113.   The institution of suit without BOARD authorization violated the due process rights of the SUPERINTENDENT as well as his right to be free of vexatious litigation.

114.   Moreover, the SUPERINTENDENT is entitled to relief under the laws of the State of Louisiana for malicious prosecution.  The state court suit, *Laura Lebeouf, et al. v. Jerome M. Puyau*, Case No. 105,933 Division A, 15TH JUDICIAL DISTRICT COURT for the Parish of Vermilion, was commenced against the SUPERINTENDENT by LAURA LEBEOUF, KIBBIE PILLETTE, DAVID DUPUIS and SARA DUPLECHAIN

with malice, without BOARD authorization and was dismissed with prejudice.  As a result of this suit, the SUPERINTENDENT sustained damage for attorney fees to defend against the complaint.

### COUNT FOUR
### Abuse of Process
### Louisiana Civil Code Article 2315

115.    The SUPERINTENDENT repeats and re-alleges all of the paragraphs in this Complaint as if fully set forth herein.

116.    "To state a claim for abuse of process under Louisiana tort law, a plaintiff must allege two essential elements: (1) an ulterior purpose; and (2) a willful act in the use of process that is not in the regular conduct of the proceeding." *Grant v. Farm Credit Bank of Texas*, 841 F. Supp. 186, 190 (W.D. La. 1992), aff'd, 8 F.3d 295 (5th Cir. 1993).

117.    The most recent suit instituted against the SUPERINTENDENT, this time by the BOARD, seeks to judicially enforce the BOARD's unlawful suspension by enjoining the SUPERINTENDENT from performing the duties imposed by state law and his contract as the chief executive office of the school district.  No authority, within Louisiana statutes or contract with the SUPERINTENDENT, for the BOARD's imposition of the punitive conditions of the suspension has been provided to the state

court.  No authority for the state district court to act has been cited.  The BOARD

seeks to obtain judicially what it otherwise lacks authority to accomplish.

## COUNT FIVE
### (Breach of Contract -State Law Claim
### Defendant, Vermilion Parish School Board)

118.    The SUPERINTENDENT repeats and re-alleges all of the paragraphs in this

Complaint as if fully set forth herein.

119.    As described more fully above, the SUPERINTENDENT entered into his current

employment contract on January 10, 2018.

120.    The SUPERINTENDENT has fully performed his obligations under the contract.

121.    The BOARD, LAURA LEBEOUF, KIBBIE PILLETTE, DAVID DUPUIS AND

SARA DUPLECHAIN have breached the contract by declaring that the

SUPERINTENDENT shall not be permitted to serve the remaining three years as the

Superintendent of the School District, and that  the SUPERINTENDENT shall not

receive his remaining compensation and other benefits as provided in the

Employment Contract.

122.    The BOARD, LAURA LEBEOUF, KIBBIE PILLETTE, DAVID DUPUIS AND

SARA DUPLECHAIN  further breached the Employment Contract by suspending

without authority the SUPERINTENDENT for allegations for which he received no

notice for and had no opportunity to have a meaningful hearing, and otherwise acting in an arbitrary, capricious, and unreasonable manner. In the alternative, the BOARD showed extreme prejudice and bias against the SUPERINTENDENT to the extent that the BOARD is and will be unable to provide him a fair hearing.

123.   The SUPERINTENDENT has suffered damages as a direct and proximate result of the Defendants' breach of contract.

**COUNT SIX**
**Intentional Infliction of Emotional Distress.**
**Louisiana Civil Code Article 2315**

124.   The SUPERINTENDENT repeats and re-alleges all of the paragraphs in this Complaint as if fully set forth herein.

125.   In the manner described more fully above, by wrongfully suspending and seeking to terminate the SUPERINTENDENT's contract for cause on August 6, 2018, the BOARD, LAURA LEBEOUF, KIBBIE PILLETTE, DAVID DUPUIS AND SARA DUPLECHAIN engaged in extreme and outrageous conduct, determined by the hearing officer to be arbitrary and capricious and without cause, by accusing  the SUPERINTENDENT of, but not limited to, the following:

    a.   "Does not observe the principals"

    b.   "Attitude: 'I'm the Boss. I make all the decisions.'"

    c.  Insubordination

    d.  "Vindictive", "Erratic behavior", "Confrontational"

126.  In the manner described more fully above, by wrongfully suspending and seeking to terminate the SUPERINTENDENT's contract for cause on July 25, 2019, the BOARD, LAURA LEBEOUF, KIBBIE PILLETTE, and DAVID DUPUIS engaged in extreme and outrageous conduct by accusing  the SUPERINTENDENT of, but not limited to, the following:

    a.  failing to put items on the agenda

    b.  failing to eliminate position of Risk Manager/Legal Counsel

    c.  failing to acknowledge Hammonds, Sills, Adkins & Guice as BOARD general counsel

    d.  hiring personnel who do not meet qualifications

    e.  authorizing payment of private counsel with BOARD money

    f.  any other matters that could be discovered through an investigation

127.  Defendants stood in a position of power and authority over the SUPERINTENDENT, and the allegations set forth above constituted an abuse of power or authority.

128.    Defendants' actions set forth above were undertaken with intent or knowledge that there was a high probability that the conduct would inflict severe emotional distress and with reckless disregard of that probability.

129.    Defendants' actions set forth above were undertaken with malice, willfulness, and reckless indifference to the rights of others.

130.    As a direct and proximate result of this misconduct,  the SUPERINTENDENT suffered injuries, including severe emotional distress and great conscious pain and suffering.

## PRAYER FOR RELIEF

The conduct previously alleged, unless and until enjoined by order of this Court, will cause great and irreparable injury to the SUPERINTENDENT.  Further, a judicial declaration is necessary and appropriate at this time so that all parties may know their respective rights and act accordingly.

WHEREFORE, Plaintiff prays for judgment as follows:

1.    A declaration that Defendants' actions, described herein, violate the First, Fifth and Fourteenth Amendments to the United States Constitution;

2.    An order enjoining all Defendants and their employees, agents, and any and all persons acting in concert with them from further violation of Plaintiff s civil rights under the First, Fifth and Fourteenth Amendments to the United States Constitution;

3.      An order enjoining Laura Lebeouf, Kibbie Pillette and David Dupuis from participating in any manner in any proceeding before the Vermilion Parish School Board involving or otherwise concerning the Plaintiff;

4.      An order awarding actual damages in an amount to be proven at trial for violations of federally protected rights that have been clearly established;

5.      An order awarding punitive damages in an amount to be proven at trial for violations of federally protected rights that have been clearly established;

6.      An order awarding Plaintiff reasonable attorneys' fees, litigation expenses and costs pursuant to 42 U.S.C. § 1988 and any other applicable law;

7.      An order awarding such other and further relief as the Court deems just and proper.

Dated:   __September 10, 2019__                    Respectfully Submitted,

By: */s/Brett L. Grayson* _____
BRETT L. GRAYSON, (#06268)
850 Kaliste Saloom Rd., Suite 120
Lafayette, Louisiana 70508-4230
Telephone: (337) 706-7646
Facsimile: (337) 706-7648
Email: brett.grayson@blgraysonesq.com
ATTORNEY FOR JEROME M.  PUYAU