# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **JEROME M. PUYAU,** | * | **CASE NO.: 6:19-cv-01185** |
| *Plaintiff* | * | |
| **VERSUS** | * | |
| | * | **JUDGE ROBERT SUMMERHAYS** |
| **LAURA LEBEOUF; KIBBIE** | * | |
| **PILLETTE; DR. DAVID DUPUIS;** | * | |
| **SARA DUPLECHAIN; AND THE** | * | **MAGISTRATE CAROL WHITEHURST** |
| **VERMILION PARISH SCHOOL** | * | |
| **BOARD** | * | |
| *Defendants* | * | |

# MEMORANDUM IN OPPOSITION TO APPLICATION FOR INJUNCTIVE RELIEF

**MAY IT PLEASE THE COURT**:

Defendants, Laura LeBeouf, Kibbie Pillette, Dr. David Dupuis, Sara Duplechain, and the Vermilion Parish School Board ("VPSB" or "the Board"), respectfully submit this Memorandum in Opposition to Plaintiff's Application for Injunctive Relief. As set forth in greater detail below, Plaintiffs' application for injunctive relief is deficient in that it offers little more than conclusory hyperbole, does not provide a single citation to any case, law, or secondary source that supports his request, and, as such, fails to satisfy the heavy burden required to justify the extraordinary remedy of an injunction. Accordingly, Defendants respectfully submit that Plaintiff's Application should be dismissed or, in the alternative, denied as a matter of law.

## I.   BACKGROUND

### A.   Current Posture of Employment Actions concerning Plaintiff

At a special meeting on July 25, 2019, the Board approved – by a vote of five (5) members to two (2) – a resolution authorizing an investigation of potential misconduct by Plaintiff, who currently serves as the Superintendent of the Vermilion Parish Public School System and has served

in that capacity at all times relevant to this matter.[1]  The resolution authorized the Board to hire special legal counsel to investigate a number of matters including the Plaintiff's: (1) failure to put items on Board agendas as requested by Board members, in violation of Board policy and a court order issued by Louisiana's Fifteenth Judicial District Court; (2) failure to acknowledge and implement Board action of May 30, 2019 to eliminate the position of Risk Manager/Legal Counsel; (3) failure to acknowledge Board action of May 30, 2019 employing general counsel for the Board and directing the referral of all legal matters concerning the school system to general counsel for the Board; (4) hiring of administrative personnel who do not meet the qualifications outlined in the Board-approved job descriptions for such personnel; and (5) authorization of the payment of private attorneys fees with Board funds without the knowledge or approval of the Board.[2]  The resolution also authorized special legal counsel to investigate other matters that should be discovered through a thorough investigation of the aforementioned matters.[3]  At the same special meeting on July 25, 2019, the Board voted – by a vote of four (4) members to (3) – to place Plaintiff on administrative leave with pay effective immediately and pending the completion of the investigation.[4]  Plaintiff admits that he has not complied with the Board's July 25, 2019 action concerning administrative leave with pay.[5]

Consistent with State law, the resolution was submitted to the Louisiana Department of Justice for review and approval and received such approval on August 2, 2019.[6]  Shortly after the receipt of approval from the Louisiana Department of Justice, the Pecoraro Law Firm commenced its investigation, which remains in progress at the time of this filing.  Upon the conclusion of the investigation, the Pecoraro Law Firm will report its findings to the Board for consideration and

---

[1] Rec. Doc. 1-40 at pg. 2.
[2] Rec. Doc. 1-41 at pg. 1.
[3] *Id.*
[4] Rec. Doc. 1-40 at pg. 2-3.
[5] Rec. Doc. 1 at ¶ 81.
[6] Rec. Doc. 1-41 at pg. 2.

possible action.  Such action may include termination of Plaintiff's Employment Contract consistent with the terms of subsection 7(D) therein and Louisiana Revised Statute 17:54(B)(1)(b)(iii) and (C), which provide the Plaintiff with a right to written charges and a fair hearing before the Board after reasonable written notice.[7]

**B.      The Board's Authority to Initiate Employment Actions Concerning the Plaintiff**

Under Louisiana law, the only entity authorized to "elect a superintendent of schools" is the local public school board for that jurisdiction.[8]  Similarly, the only entity with the authority to terminate the employment of a superintendent of schools is the public school board that hired that individual.[9]  In this case, that entity is the Vermilion Parish School Board.    The procedure for removal of a superintendent during the contract period is contained in La. R.S. 17:54(B)(1)(b)(iii) and provides that the superintendent shall "have the right to written charges and a fair hearing before the board after reasonable written notice."  Additionally, a superintendent may be removed from office "prior to the expiration of his contract by the concurrent vote of at least two-thirds of the membership of the entire school board at any regular meeting or at any special meeting after due notice."[10]

The statute is clear, therefore, that Plaintiff has the right to written charges and a fair hearing before the Board and that a vote of two-thirds of the total membership of the Board is required to terminate Plaintiff prior to the conclusion of his contract.  The statute does not prohibit suspension of a superintendent while any such investigation is underway.[11]  Given the central role of Louisiana public school superintendents in the employment and retention of school system staff, the assignment of administrative leave with pay allows an investigation to be undertaken without fear by

---

[7] Rec. Doc. 1-22 at pg. 6.
[8] LA. REV. STAT. § 17:54(B)(1)(a).
[9] LA. REV. STAT. § 17:54(B)(1)(b)(iii); 17:54(C).
[10] LA. REV. STAT. § 17:54(C).
[11] Plaintiff's contract also contains no limits on the Board's authority to investigate the Plaintiff's job performance or to assign him to administrative leave pending any such investigation.  Rec. Doc. 1-22.

employees that they may be subjected to retaliation by the superintendent in response to their participation in the investigation. Additionally, the placing of a superintendent on leave with pay protects the superintendent from claims that he or she interfered with the investigation or exerted unfair pressure on staff members to either not cooperate or to not provide complete information.

Neither Louisiana Revised Statute 17:54 nor Plaintiff's contract clearly define how charges against a superintendent are to be investigated, nor do they indicate who is to prepare written charges against him and present evidence in support of those charges during the "fair hearing before the board."[12] In this case, the Board voted to hire special counsel to investigate concerns about the Superintendent's performance of his duties and to determine whether his performance warrants the pursuit of charges under Louisiana Revised Statute 17:54 and his employment contract. In the event that the Board chooses to bring such charges as a result of the report of the current investigator, the Board would be required to meet to vote upon those charges and could not hold any hearing on those charges without allowing Plaintiff reasonable time to prepare for such hearing.[13] Given the ongoing nature of the investigation, it is expected that a hearing to consider any such charges against the Superintendent would not be conducted within the next thirty (30) days.

Further, under Louisiana law, public school boards are given broad plenary "authori[ty] to make such rules and regulations for its own government, not inconsistent with law or with the regulations of the State Board of Elementary and Secondary Education ("BESE"), as it may deem proper."[14] Placing Plaintiff on paid administrative leave pending an investigation is not inconsistent with any Louisiana law or regulation of BESE. Importantly, Plaintiff has failed to point to any applicable statute or regulation that states otherwise.

---

[12] LA. REV. STAT. § 17:54(B)(1)(b)(iii); Rec. Doc. 1-22 at pg. 6.
[13] Id.
[14] LA. REV. STAT. § 17:81(C).

In summary, Louisiana Revised Statute 17:54 establishes a procedure for termination of Plaintiff during the term of his contract. In the event that the impartial investigator should discover evidence in support of charges against a superintendent, and, in the event that a school board should find any of those charges to be serious enough to warrant a hearing for the superintendent, and, if the charges are placed in writing and provided to the superintendent and a hearing is scheduled after reasonable delay (usually, not less than 20 days), and, if the school board finds the superintendent guilty of one or more of the charges against him or her and terminates his or her contract, then, and – only then – can a superintendent institute an action to challenge the legality of that decision.

## C.   Plaintiff's Prior Efforts to Subvert Board Supervision of His Job Performance

At a special meeting held on August 6, 2018, the Board approved a motion to place Plaintiff on leave with pay pending the outcome of an investigation of his job performance.[15]  At that same meeting, the Board announced that an investigator would be named at a later date.[16]  On August 13, 2019, the Board met as a Committee of the Whole and approved a motion to remove from the agenda an item concerning the investigation of Plaintiff.[17]  On August 16, 2018, the Board approved a motion to appoint a panel, consisting of two (2) Board members and the school system's Risk Manager/Legal Counsel, to investigate the job performance of Plaintiff.[18]  Due to the subsequent and unauthorized actions of the then-President of the Board, this investigation was never conducted, and no disciplinary charges were brought against Plaintiff.

On August 24, 2018, the then-President of the Board appointed a "Disciplinary Hearing Officer" based on Plaintiff's request for a hearing by same.[19]  The Board did not request or authorize the appointment of the hearing officer or the implementation of disciplinary proceedings regarding Plaintiff.  Despite the lack of any disciplinary charges against the Superintendent and the

---

[15] Rec. Doc. 1-23 at pg. 5.
[16] *Id.*
[17] Exhibit 1 at Bates No. 002 – Minutes of August 13, 2018 Meeting of Board Committee of the Whole.

Board's unanimous approval of a September 6, 2018 motion to postpone the unauthorized September 7, 2018 hearing,[20] the hearing was held at 5:00 p.m. on that date, a Friday.[21]  Two witnesses appeared at the hearing.[22]  No Board members were present.[23]

At the September 7, 2018 hearing, the hearing officer presented no charges against Plaintiff and stated that the purpose of the hearing was to reach a determination as to "whether the action of the school board, as [he] appreciate[s] in putting [Plaintiff] on leave with pay on the 6th of August, was arbitrary and capricious or not."[24]  The hearing officer cited no legal authority for conducting such a hearing reviewing the prior actions of the Board.  He stated for the record that the hearing was not authorized under Board Policy GAE[25] or KE[26], the Board's grievance policies, but that Plaintiff had requested that the hearing "be conducted pursuant to the Vermilion Parish School Board adopted grievance policy."[27]

Despite purportedly proceeding under Board grievance policies, the hearing officer did not issue a recommendation to the Board as required by Policy GAE, the only Board grievance policy which authorized the use of an outside hearing officer.[28]  Instead, he issued a lengthy letter dismissing the majority of the concerns on the procedural grounds that the complainants had failed to follow the appropriate procedures.[29]  The hearing officer disposed of the complaints on procedural grounds despite implementing the Plaintiff's requested procedures and without informing the complaints of any other procedures available to them.  In short, the September 7, 2018 hearing was not a bona fide act of the Board's supervisory authority over Plaintiff; it was

---

[18] Rec. Doc. 1-26 at pg. 2.
[19] Rec. Doc. 1-27 at pg. 1.
[20] Exhibit 2 at Bates No. 006 – Minutes of September 6, 2018 Special Meeting of Board.
[21] Rec. Doc. 1-29 at pg. 1.
[22] *Id.* at pg. 3.
[23] *Id.* at pg. 10.
[24] *Id.* at pg. 9.
[25] Rec. Doc. 1-7.
[26] Rec. Doc. 1-8.
[27] Rec. Doc. 1-29 at pg. 6.
[28] Rec. Doc. 1-7 at pg. 2.

initiated without Board authority, was held at the request of the Plaintiff, was conducted using procedures requested by Plaintiff, and was largely dismissed due to Plaintiffs failure to properly implement his obligations under Policies GAE and KE to investigate grievances by employees and members of the public.[30]  On the basis of these sham findings, Plaintiff unilaterally terminated his leave with pay prior to the completion of the investigation initiated on August 16, 2018 and without Board authority to return. The Board took no further formal action at that time.

The President of the Board called special meeting for July 15, 2019.  The agenda for the meeting contained three items relevant to the current matter: (1) consideration of the hiring of general counsel to investigate matters concerning Plaintiffs' job performance, (2) consideration of placing Plaintiff on leave pending the investigation, and (3) consideration of a directive to all employees to cooperate with the investigation.[31]

However, prior to the meeting, Plaintiff filed a Suit for Injunctive Relief in the Fifteenth Judicial District Court of Louisiana on July 12, 2019 seeking a temporary restraining order which would enjoin the Board from appointing special counsel to conduct an investigation of his job performance, from placing Plaintiff on leave with pay pending the investigation, and from directing Board employees to cooperate with the investigation.[32]  Additionally, Plaintiff's request for a temporary restraining order sought to enjoin the Board's general counsel from providing the Board with "any advice" concerning the other issues sought to be enjoined.[33]  Plaintiff's requests for a temporary restraining order was granted without hearing on July 15, 2019 at 10:00 a.m. by a district court judge in Louisiana's Fifteenth Judicial District.[34]  The temporary restraining order was served

---

[29] Rec. Doc. 1-30 at pg. 14.
[30] Rec. Doc. 1-7; R. Doc 1-8.  If the hearing was held pursuant to Policy GAE, the "missing" procedures should have been implemented by Plaintiff.  If the hearing was held pursuant to Policy KE, the hearing officer was acting as the Board's agent and should have addressed the claims.
[31] Exhibit 3 at Bates Nos. 008 - 009 – Agenda of July 15, 2019 VPSB Special Board Meeting.
[32] Exhibit 4 at Bates Nos. 013 - 014 – July 12, 2019 Suit for Injunctive Relief; La. 15th JDC Docket No. 106979.
[33] Id.
[34] Exhibit 5 at Bates No. 021 – July 12, 2019 Temporary Restraining Order; La. 15th JDC Docket No. 106979.

on the Board and its general counsel as they arrived for the scheduled meeting, and, in compliance with the order, the Board did not hold a special meeting on July 15, 2019.[35]

On July 23, 2019, a hearing was held on Plaintiff's request for a preliminary injunction.[36] After a brief hearing, in which Plaintiff admitted that he had alleged no irreparable harm in his Petition, the Court indicated from the bench its intention to deny the request for preliminary injunctive relief and dismiss Plaintiff's suit with prejudice.  The Court also assessed all court costs to Plaintiff and awarded the Board nominal attorneys' fees to be paid by Plaintiff.  The Court issued an order memorializing its decision on August 6, 2019.[37]

On July 25, 2019, the Board held a special meeting to consider the three items which it had been temporarily enjoined from addressing at the planned special meeting of July 15, 2019.[38]  At the meeting the Board undertook the actions discussed above concerning the initiation of an investigation of Plaintiff's job performance, the assignment of the Superintendent to administrative leave with pay, and the directing of all Board employees to cooperate in the investigation.[39]

On August 12, 2019, Defendants received an Open Meetings Complaint file by Plaintiff with the Louisiana Department of Justice alleging numerous violations of Louisiana's Open Meetings Law[40] in connection with the planned – but not held – July 15, 2019 special meeting and the July 25, 2019 special meeting.[41]  On August 30, 2019 the Board responded to Plaintiff's complaint by letter to the Department of Justice.[42]  In its response the Board opposed each of Plaintiff's allegations and provided supporting documentation demonstrating Plaintiff's misrepresentations of fact and law in his complaint.  On September 6, 2019, The Louisiana Department of Justice notified the Board by

---

[35] Rec. Doc. 1-40 at pg. 1.
[36] Exhibit 6 at Bates No. 023 – August 6, 2019 Judgement; La. 15th JDC Docket No. 106979.
[37] *Id.*
[38] Rec. Doc. 1-40.
[39] *Id.*
[40] *See* LA. REV. STAT. § 42:1 *et. seq.*
[41] Exhibit 7 at Bates Nos. 026 - 032 – August 12, 2019 Open Meetings Complaint 19-0015
[42] Exhibit 8 at Bates Nos. 034 - 065 – August 30, 2019 Response to Open Meetings Complaint 19-0015

letter that it had "determined that the Open Meetings Law was followed, and no violation occurred."[43]

## D.    **Procedural History**

Plaintiff filed his Complaint against Defendants on September 10, 2019.[44]   On September 14, 2019, Plaintiff filed his "Application for Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Issue."[45]   On September 16, 2019, the Court held a telephone conference with counsel for the parties and:

> The Court request[ed] that the parties be prepared to address the plaintiff's claims in light of *Kinsey v. Salado Indep. Sch. Dist.*, 950 F.2d 988 (5th Cir. 1992). Moreover, since the plaintiff has not been terminated and there is no imminent termination proceeding, the Court request[ed] that the parties be prepared to address ripeness in light of *Kinsey.* The Court will rule on the basis of the parties' papers and arguments during the hearing. The Court will not take evidence.[46]

As detailed below, Defendants respectfully submit that Plaintiff has failed to satisfy the heavy burden required to justify the extraordinary remedy of an injunction and that Plaintiffs' Application should be dismissed or, in the alternative, denied as a matter of law.

## II.    LAW AND ARGUMENTS

## A.    **Plaintiff is not Entitled to Injunctive Relief**

The Fifth Circuit has "cautioned repeatedly that a preliminary injunction is an extraordinary remedy which should not be granted unless the party seeking it has clearly carried the burden of persuasion."[47] Within this framework, Plaintiff bears the burden of proving the following elements:

> (1) a substantial likelihood that he will prevail on the merits, (2) a substantial threat that he will suffer irreparable injury if the injunction is not granted, (3) his threatened injury outweighs the threatened harm to the party whom he seeks to

---

[43] Exhibit 9 at Bates No. 067 – September 6, 2019 Department of Justice Closure of Open Meetings Complaint 19-0015
[44] Complaint, Rec. Doc. 1.
[45] Rec. Doc. 4. Application for Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Issue.
[46] Rec. Doc. 7. Amended Minutes of Telephone Conference.
[47] *Lake Charles Diesel, Inc v. General Motors Corp.*, 328 F.3d 192, 196 (5th Cir.2003) (internal citations omitted).

enjoin, and (4) granting the preliminary injunction will not disserve the public interest.[48]

Plaintiff cannot establish any of these elements, and therefore falls well short of his heightened burden in seeking disfavored, preliminary injunctive relief, much less a temporary restraining order.

Furthermore, Federal Rule of Civil Procedure 65(d)(1) requires that "[e]very order grating an injunction and every restraining order must … describe in reasonable detail--and not by referring to the complaint or other document--the act or acts restrained or required."  Plaintiff's requested injunctive relief is unreasonable vague and does not provide fair notice to Defendants of the act or acts which he seeks to restrain.  For this reason and the reasons stated more fully below, Plaintiff's request for a temporary restraining order and preliminary injunctive relief should be denied.

As an initial matter, Plaintiff's Application and Memorandum in Support have woven a tale supported with scant and conclusory allegations.  Plaintiff does little more than proclaim he has satisfied the requirements for an injunction without a single citation to any relevant legal authority.  This Court's Local Rule 7.4 unambiguously states that a memorandum in support "shall contain (1) a concise statement of reasons in support of the motion, and (2) citations of the authorities on which he relies or copies of these authorities."  Plaintiff has utterly failed to demonstrate how the facts of this case satisfy any of the elements, substantive or procedural, necessary for an injunction.

Further, Defendants respond only to the arguments raised by Plaintiff's Application and Memorandum in Support.  While Plaintiff's lengthy Complaint cites numerous Louisiana statutes and makes several legal arguments throughout, "[l]egal arguments are not proper in [a] complaint."[49] Some courts have found that including legal arguments "in a pleading violates Rule 8(a)'s 'short and

---

[48] *Id.* at 195-96.

[49] *Howard v. Livingston*, CIV.A. H-13-2679, 2014 WL 1168945, at *1 (S.D. Tex. Mar. 20, 2014); *see also*, *Preston v. Seterus, Inc.*, 931 F. Supp. 2d 743, 769 (N.D. Tex. 2013) (granting leave to amend but requiring that the plaintiffs' "amended complaint must not contain any legal arguments or factual allegations based on these theories"); *Jennerjahn v. City of Los Angeles*, CV1500263JFWGJS, 2015 WL 5138671, at *5 (C.D. Cal. July 27, 2015), *report and recommendation adopted*, CV1500263JFWGJS, 2015 WL 5145507 (C.D. Cal. Sept. 1, 2015) (recommending leave to amend and explaining that plaintiff "should not include case law in his Complaint because it is not a memorandum of law").

plain statement' requirement" and have struck "portions of a complaint containing legal arguments[.]"[50]   Accordingly, to the extent Plaintiff relies on the legal arguments in his Complaint rather than this Application, the Board responds only to the Application arguments.

**1. Plaintiff is Unlikely to Prevail on the Merits of his Claim.**

Plaintiff is unable to support any of the counts presented in his Original Verified Complaint. As noted above, Plaintiff does little more than state that "there is a likelihood that [he] will succeed on the merit of this action"[51] and assert conclusory arguments that "[his] rights ... have been trampled on by [the] [D]efendants."[52]   As detailed below, Plaintiff has fallen far short of demonstrating he is likely to prevail on the merits.

**a. Count One – First Amendment and Due Process Fourteenth Amendment - 42 U.S.C. § 1983**

Plaintiff's initial count relies on his contention that the Board has violated his rights to "free speech and association" under the First Amendment of the U.S. Constitution and his right to procedural due process by placing him on leave with pay pending the current investigation.[53] Neither Federal law, Louisiana law, nor the Plaintiff's employment contract place any limits on the Board's authority to place him on administrative leave with pay pending an investigation of his professional conduct.

From the outset, however, Defendants note that Plaintiff has asserted a claim based on an alleged infringement of his "first amendment rights of free speech and association" because the conditions of him being placed on paid administrative leave "prohibited from communicating with anyone on behalf of the Board or the school system."[54]   Indeed, Plaintiff's entire argument on this

---

[50] *In re NC Swine Farm Nuisance Litig.*, 5:15-CV-13-BR, 2015 WL 3948309, at *3 (E.D.N.C. June 29, 2015) (citing *Black v. UNUMProvident Corp.*, 245 F.Supp.2d 194, 19798 (D.Me.2003); *Barrett v. City of Allentown*, 152 F.R.D. 50, 53 (E.D. Pa.1992)).
[51] Plaintiff's Application, Rec. Doc. 4 at p. 6.
[52] Supplemental Memorandum in Support, Record Document 4-4 at p. 5.
[53] *See* Complaint, Rec. Doc. 1 at pp. ¶¶ 94-103.
[54] Complaint, Rec. Doc. 1 at p. 38 ¶ 101-102.

claim is that "[h]is rights to speak and associate with his peers" have allegedly been violated.[55]

Notable, however, is that Plaintiff has <u>not</u> alleged retaliation.  Generally, such claims arise in the

retaliation context in employment matters.

Nevertheless, with regard to Plaintiff's claim that the Board restricted his right to speak,

"[t]he [Supreme] Court has made clear that public employees do not surrender all their First

Amendment rights by reason of their employment. Rather, the First Amendment protects a public

employee's right, in certain circumstances, to speak as a citizen addressing matters of public

concern."[56]  As explained by the Supreme Court:

> There are two inquiries to guide interpretation of the constitutional protections
> accorded to public employee speech. The first requires determining whether the
> employee spoke as a citizen on a matter of public concern…. If the answer is no, the
> employee has no First Amendment cause of action based on his or her employer's
> reaction to the speech…. If the answer is yes, then the possibility of a First
> Amendment claim arises. The question becomes whether the relevant government
> entity had an adequate justification for treating the employee differently from any
> other member of the general public.[57]

As another division of this Court has recently explained (albeit in the retaliation context):

> "Whether an employee's speech addresses a matter of public concern must be
> determined by the content, form, and context of a given statement, as revealed by
> the whole record." [*Salge v. Edna Independent Sch. Dist.*, 411 F.3d 178, 186 (5th Cir.
> 2005)] (citing *Connick v. Myers*, 461 U.S. 138, 147–48[,103 S. Ct. 1684, 1690, 75 L. Ed.
> 2d 708] (1983)). These factors "must be considered as a whole package, and [their]
> significance … will differ depending on the circumstances of the particular situation."
> *Moore v. City of Kilgore*, 877 F.2d 364, 370 (5th Cir. 1989). If an employee's
> speech involves both public and private concerns, so-called mixed speech, the Court
> examines whether the content, context, and form of the statements are
> predominantly public or private. *Foley v. Univ. of Houston Sys.*, 355 F.3d 333, 341 (5th
> Cir. 2003). As the Fifth Circuit has recognized "[m]ixed speech cases are perhaps the
> most difficult subset of employee speech cases to adjudicate. Because the employee
> admittedly speaks from multiple motives, determining whether she speaks as a
> citizen or employee requires a precise and factually-sensitive determination." *Kennedy
> v. Tangipahoa Parish Library Bd. of Control*, 224 F.3d 359, 367 (5th Cir. 2000), *abrogated
> on other grounds by Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).

---

[55] Supplemental Memorandum in Support, Record Document 4-4 at p. 5.

[56] *Garcetti v. Ceballos*, 547 U.S. 410, 417, 126 S. Ct. 1951, 1957, 164 L. Ed. 2d 689 (2006) (citations omitted).

[57] *Garcetti*, 547 U.S. at 418; *see also Lane v. Franks*, 573 U.S. 228, 237 (2014) (If an employee did not speak on a matter of public concern, then " 'the employee has no First Amendment cause of action based on his or her employer's reaction to the speech.' ") (quoting *Garcetti*, 547 U.S. at 418).

In *Kennedy*, the Fifth Circuit identified certain principles in determining whether speech is protected. First, the content of the speech may relate to the public concern if it does not involve "solely personal matters or strictly a discussion of management policies that is only interesting to the public by virtue of the manager's status as an arm of the government." *Id.* at 366-67 (citing *Wilson v. Univ. of Tex. Health Ctr.*, 973 F.2d 1263 (5th Cir. 1992)). Second, speech on matters of public concern need not be made before a public audience. Finally, speech is not on a matter of public concern if it is made solely in "furtherance of a personal employer-employee dispute." *Id.* at 372.

In accordance with these precepts, the Fifth Circuit has noted that speech regarding "internal personnel disputes and working conditions" will not ordinarily involve the public concern. *Branton v. City of Dallas*, 272 F.3d 730, 739 (5th Cir. 2001). Typically, an employee speaks in furtherance of a personal employer-employee dispute "when he discusses personnel matters directly impacting his job or criticizes other employees or supervisors' job performance." *Salge*, 411 F.3d at 188 (citing *Kirkland v. Northside Independent Sch. Dist.*, 890 F.2d 794, 798 n. 10 (5th Cir. 1989)).[58]

Here, Plaintiff alleges that he has been restricted from "communicating with anyone *on behalf of the Board or school system.*"[59]   However, Plaintiff has also admitted that, despite being put on paid administrative leave, he "maintained his office and remained in charge of the Vermilion Parish School District."[60]  That is to say, he defied the Board placing him on administrative leave and, as explained below, was subjected to no harm whatsoever.

In any event, being restricted from speaking to the Board's employees during a pending investigation is the quintessential employer-employee dispute. And, restricting Plaintiff from speaking *on behalf of* the Board does not in any way restrict his ability to speak as a citizen.[61]

Additionally, *Kinsey v. Salado Independent School District*, 950 F.2d 988 (5th Cir. 1992), is instructive.  In *Kinsey*, that plaintiff, who was also a superintendent, actively opposed school board candidates during an election cycle who were elected despite his efforts.  The Fifth Circuit explained

[58] *Moreau v. St. Landry Par. Fire Dist. No. 3*, CV 6:18-00532, 2019 WL 4282696, at *6–7 (W.D. La. Sept. 10, 2019) (footnotes omitted).
[59] Complaint, Rec. Doc. 1, at p. 38 ¶ 101. (emphasis added)
[60] Complaint, Rec. Doc. 1 at p. 31 ¶ 68.
[61] *See, e.g., LaRavia v. Cerise*, CV 08-352-MD, 2010 WL 11469112, at *5-6 (M.D. La. Dec. 14, 2010), *aff'd*, 462 Fed. Appx. 459 (5th Cir. 2012)(unpublished) (finding no deprivation of right of free speech where plaintiff was not restricted from expressing his personal views so long as it was not attributed to the LSU Health Sciences Center)

that the superintendent position is a sensitive, high-level decision making position that requires a close working relationship with the school board and that the superintendent's political opposition to newly elected school board members would hinder the close working relationship he needed with the board.[62]  While finding that the Superintendent's speech and association involved matters of "great" public concern, and that his conduct was not hostile, abusive, or insubordinate, the superintendent's opposition to the new board members' election made his position in the election well-known and left "no doubt" that his relationship with the board was strained as a result.[63]  As summarized by the Fifth Circuit, "in light of his high-level policymaker position, [the Superintendent] stepped over the line" and "abandoned any shelter otherwise provided by the First Amendment."[64]

Here, the Board placed the Plaintiff on paid administrative leave and placed reasonable restrictions (which he has refused to follow) on his ability to speak on behalf of the Board.  Plaintiff's "First Amendment rights [do not] outweigh the [Board's] interest in the effective provision of public services,"[65] particularly where he is being investigated.  In sum, Plaintiff cannot demonstrate he is likely to succeed on his First Amendment freedom of speech claim.

Similarly, Plaintiffs' claim under the First Amendment for freedom of association fails as a matter of law.  As noted above, Plaintiff curtly argues that his right to "associate with his peers" has been violated.[66]  Again, Plaintiffs' admission that he has defied the Board's restrictions belies this argument.  Nevertheless, there is no right to associate with peers under the First Amendment.  The First Amendment "does not include a generalized right of social association."[67] The Supreme Court has identified two types of protected freedoms of association: (1) intimate association, and (2)

---

[62] *Kinsey*, 950 F.2d at 996.
[63] *Id.* at 994, 996.
[64] *Id.* at 996.
[65] *Id.*
[66] Supplemental Memorandum in Support, Record Document 4-4 at p. 5.

expressive association.[68]  The second category is inapplicable here because it concerns associating for the purpose of engaging in activities protected by the First Amendment, i.e., "assembly, petition for the redress of grievances, and the exercise of religion."[69]

For the first category, "[i]ntimate human relationships include marriage, the begetting and bearing of children, child rearing and education, and cohabitation with relatives.[70]  However, "[r]elationships with colleagues ordinarily are not afforded protection as intimate associations."[71] Indeed, the Fifth Circuit has held that neither the "tight relationship" between police officers, nor the "social and professional" relationship between police officer and police chief constitute an intimate relationship for the purposes of freedom of association.[72]  Accordingly, Plaintiff's First Amendment claim of freedom of association fails as a matter of law because his "associat[ion] with his peers" is not protected by the First Amendment.

Finally, Plaintiff asserts a claim under the Fourteenth Amendment that he was deprived of a property interest without due process.[73]  This too fails as a matter of law.  In order "to invoke a right to procedural due process, [a] [p]laintiff must ... show the deprivation of a protected property interest."[74]  However, "an employment decision to place an employee on paid administrative leave," even without notice or an opportunity to be heard,  "does not amount to deprivation of a protected property interest."[75]  As such, Plaintiff cannot succeed on this claim as a matter of law.

The Board is aware of its obligation to provide Plaintiff with specific procedural safeguards in the event that the Board seeks to terminate Plaintiff's contract prior to the expiration of its term.

---

[67] *Caleb v. Grier*, 598 Fed. Appx. 227, 237 (5th Cir. 2015)(unpublished) (citing *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1051 (5th Cir.1996)).
[68] *LaRavia*, 2010 WL 11469112, at *6 (citing *Roberts v. U.S. Jaycees*, 468 U.S. 609, 104 S. Ct. 3244, 82 L. Ed. 2d 462 (1984)).
[69] *Id.*
[70] *Caleb*, 598 Fed. Appx. at 237.
[71] *Id.* (citations omitted)
[72] *Swanson v. City of Bruce, Miss.*, 105 Fed. Appx. 540, 542 (5th Cir. 2004)(unpublished)
[73] Complaint, Rec. Doc. 1 at p. 36 ¶ 95.
[74] *Brokaw*, 2008 WL 4191512, at *9 (citing *Board of Regents v. Roth*, 408 U.S. 564, 571, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)).

The Board's actions of July 25, 2019 did not violate Plaintiff's right to free speech or procedural due process rights under the U.S. Constitution, and he is unlikely to prevail on his claims for relief on those grounds.

### b. Count Two – Deprivation of Property Interest - Violation of the Fourteenth Amendment to the U.S. Constitution - 42 U.S.C. § 1983

Plaintiff's second count is based on his erroneous assertion that his assignment to leave with pay constitutes the deprivation of a property interest.  As an initial matter, this assertion ignores Plaintiffs admission that he has not, at any time, complied with the terms of the Board's July 25, 2019 resolution initiating his leave with pay.  Moreover, this count is unsustainable for the same reason that dooms Plaintiff's procedural due process argument – specifically, that no protected property interest was implicated when the Board opted to place him on administrative leave with pay.

As noted above, it is well established that "[f]ederal courts have held that a person's placement on [paid] administrative leave does not amount to a deprivation of a protected."[75]  As one court has noted, there is "a plethora of cases holding that a property interest does not arise from a public employee's suspension *with pay*."[76]  Thus, as a matter of law, Plaintiff's claim of a deprivation of a property interest fails and he cannot succeed on the merits of this claim.

### c. Count Three – Malicious Prosecution - Louisiana Civil Code Article 2315 and Count Four – Abuse of Process - Louisiana Civil Code Article 2315

Because Plaintiff's claims of malicious prosecution and abuse of process both rely on his assertion that the Board clearly lacks authority to seek judicial enforcement of their actions placing

---

[75] *Id.* (citing *Richards v. City of Weatherford*, 145 F. Supp. 2d 786, 790 (N.D. Tex. 2001), *aff'd*, 275 F.3d 46 (5th Cir. 2001)).
[76] *Id.* at *8 (N.D. Tex. Sept. 11, 2008) (citing *Richards*, 145 F.Supp.2d at 790-791 (holding municipal judge did not have due process protections when he was placed on administrative leave with pay); *Edwards v. California Univ. of Pa.*, 156 F.3d 488, 492 (3rd Cir.1998) (holding that suspension with pay and resulting stigma to reputation did not deprive plaintiff of protected property interest); *see also Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545-546, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (noting that a public employer can avoid a due process problem by suspending a public employee with pay)).
[77] *Thomas v. City of DeSoto*, 3-02-CV-0480-N, 2002 WL 31039714, at *2 n. 4 (N.D. Tex. Sept. 9, 2002) (citing multiple cases).

him on paid administrative leave, Defendants' analysis of Plaintiff's likelihood of success on the merits of those claims is combined.  Once again, however, Plaintiff offers nothing more than sparse conclusory allegations.

> A successful malicious prosecution claim requires a plaintiff to prove six elements:
>
> (1) the commencement or continuance of an original criminal or civil judicial proceeding; (2) its legal causation by the present defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such [a] proceeding; (5) the presence of malice therein; and (6) damage conforming to legal standards resulting to the plaintiff.[78]

An abuse of process claim has two essential elements: "(1) an ulterior purpose and (2) a willful act in the use of the process not proper in the regular conduct of the proceeding."[79] Both of these causes of action rely on a claimant's ability to demonstrate that the plaintiffs in the underlying action or actions clearly lacked authority to seek redress through the use of legal proceedings.  Plaintiff is unable to make such a demonstration.

As discussed above, neither Louisiana Revised Statute 17:54 nor Plaintiff's employment contract contain any provisions concerning his placement on leave with pay pending an investigation of his job performance.  Therefore, Plaintiff will be unable to satisfy his burden by establishing an absence of probable cause for the November 20, 2018 suit for enforcement of the Board's initial action placing Plaintiff on leave or by establishing that the Board's current suit seeking enforcement of its July 25, 2019 leave action utilizes a process not proper in the regular conduct of the hearing.

The November 2018 suit, brought by the four (4) current and former Board members named Defendants in the present matter, sought to enforce the Board's August 6, 2019 action placing Plaintiff on leave with pay.  At the time that the November 2018 suit was filed, the Board's action placing Plaintiff on leave was still effective and had not been rescinded by further action of the Board.  Nonetheless, Plaintiff had returned to work absent Board authority to do so.  Therefore,

---

[78] *Brimmer v. A. Copeland Enterprises, Inc.*, 609 So.2d 847, 848 (5th Cir. 1992) (internal citations omitted).

the issue of Plaintiff's right to return to work was subject to legal challenge.  Furthermore, the then-plaintiffs' voluntary dismissal of the claim was not related to any deficiency in the substance of their claim but to their lack of a right to bring the action as individual Board members.

The Board's current action seeking enforcement of its July 25, 2019 action placing Plaintiff on paid leave similarly presents a valid legal claim for enforcement of Board action (particularly in light of Plaintiff's admitted and open defiance of the Board placing him on paid administrative leave and the above mentioned restrictions).  The only difference between the November 2018 suit and the present suit is in their presentation.  The November 2018 suit was presented by individuals who lacked proper standing to bring such a suit while the current suit is presented with the full authority and approval of the Board.  However, the current case, like the former, presents a valid issue – one that is currently before this Court – concerning the Board's authority to place Plaintiff on leave with pay.  Plaintiff has failed to present any legal authority supporting his contention that the Board lacked authority to place him on paid leave and simply asserts that claims seeking to enforce those actions are so baseless as to warrant findings of malicious prosecution and/or abuse of conduct.

### d.  Count Five – Breach of Contract - State Law Claim; Defendant Vermilion Parish School Board

Plaintiff broadly claims that being suspended with pay constitutes a breached of contract. However, no provision in Plaintiffs contract concerns administrative leave with pay.  Nor does Plaintiff argue that any specific provision of his contract was violated in his Application. In Louisiana, a breach-of-contract claim has three "essential" elements: "(1) the obligor's undertaking an obligation to perform, (2) the obligor failed to perform the obligation (the breach), and (3) the failure to perform resulted in damages to the obligee."[80]  Plaintiff continues to be paid according to his contract and is it pure speculation as to what may result from the investigation.  Thus, it cannot

---

[79] *Simon v. Perret*, 619 So.2d 155, 157 (La. App. 3rd Cir., 1993) (internal citations omitted).
[80] *IberiaBank v. Broussard*, 907 F.3d 826, 835 (5th Cir. 2018).

18

be said that the Board failed to pay Plaintiff or that he suffered any contractual (i.e., monetary) damages as a result.  As such, this claim is meritless.

### e.  Count Six – Intentional Infliction of Emotional Distress - Louisiana Civil Code Article 2315

Next, Plaintiff asserts a claim for Intentional Infliction of Emotional Distress ("IIED"). Yet again, however, Plaintiff offers scant more than conclusory arguments.  In order to succeed on an IIED claim, one district court has succinctly explained:

> [A] plaintiff must establish that: (1) the conduct of the defendant was extreme and outrageous, (2) the emotional distress suffered by the plaintiff was severe, and (3) the defendant desired or knew that severe emotional distress would be certain or substantially certain to result from his conduct. "Extreme and outrageous conduct" is defined as conduct ... so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. The conduct must be intended or calculated to cause severe emotional distress and not just some lesser degree of fright, humiliation, embarrassment, worry, or the like.
>
> [Intentional infliction of emotional distress] claims will not lie for mere employment disputes since an **employer must be free to demote, transfer, discipline, and terminate employees even though such actions will undoubtably be unpleasant and cause emotional distress**. Conduct in the workplace, even if calculated to cause some degree of mental anguish, will rarely be so severe that it will rise to the level of "outrageous conduct." [O]rdinary employment disputes, even those involving discrimination and sexual harassment, will rise to the level of [intentional infliction of emotional distress] only in the most unusual of cases. Such situations are limited to those where the distress is more than a reasonable person could be expected to endure.[81]

Here, again, the Board placed Plaintiff on paid administrative leave pending the outcome of an investigation and is pursuing employment actions and legal claims against Plaintiff.  Such are reasonable measures and certainly does not rise to the level of extreme and outrageous conduct.  As such, this claim too fails as a matter of law.

**2.  Plaintiff will not suffer irreparable injury if the injunction is not granted.**

Once more, Plaintiff offers nothing more than conclusory arguments that he will suffer irreparable injury.  Plaintiff goes so far to claim that he is "subjected to continuing irreparable injury with each day that he must be subjected to an order of suspension."[82] However, Plaintiff's deficient arguments cannot satisfy his burden of establishing irreparable harm.

> "Irreparable harm requires a showing that: (1) the harm to Plaintiff[ ] is imminent (2) the injury would be irreparable and (3) that Plaintiff[ ] ha[s] no other adequate legal remedy."  "An injury is 'irreparable' only if it cannot be undone through monetary remedies."  "[S]peculative injury is not sufficient; there must be more than an unfounded fear on the part of the applicant."  Further, a party seeking a preliminary injunction does not suffer irreparable harm if "[t]here is nothing to suggest that harm suffered between the time of suit and the time of ultimate decision in this case would seriously prejudice [mover's] opportunity for full recovery" because, "in traditional terms of equity, the remedy at law is adequate."[83]

As noted above, Plaintiff has already admitted to defying the Board's action placing him on paid administrative leave.  Thus, it is unclear what, if any, injury Plaintiff has suffered in that regard.[84]

Moreover, it is pure speculation as to what action may or may not be taken by the Board at the conclusion of the investigation into Plaintiff and, as such, any alleged termination of his contract and/or adverse employment action is not imminent.   Should the Board decide, after the required notice of charges and hearing, to terminate Plaintiff's contract prior to the end of its term, he could then appeal that decision and seek monetary damages based on wrongful termination or breach of contract. It is well established in that, if monetary damages are available (as in this case), then there is no irreparable harm.[85] Nothing alleged by Plaintiff comes close to making a showing of damages or harm of this nature. Rather, Plaintiff's allegations are speculative and, to the extent his speculation

---

[81] *Barrera v. Aulds*, CV 14-1889, 2016 WL 3001126, at *8 (E.D. La. May 25, 2016) (emphasis supplied; citing multiple authorities).

[82] Memorandum in Support, Rec. Doc. 4-4 at p. 5.

[83] *W. Sur. Co. v. PASI of LA, Inc.*, 334 F. Supp. 3d 764, 791 (M.D. La. 2018) (citations omitted; citing multiple cases).

[84] *See* Complaint, Rec. Doc. 1 at p. 31 ¶ 68.

[85] *Johnson Controls, Inc. v. Guidry*, 724 F. Supp. 2d 612, 619 (W.D. La. 2010) ("there can be no irreparable injury where money damages would adequately compensate a plaintiff").

may prove true, his remedy would clearly be monetary in nature. Accordingly, Plaintiff cannot establish that he will suffer imminent irreparable harm.

### 3. Granting Plaintiff's requested injunctive relief would disserve the public interest and the resulting harm to the Defendants would outweigh any threatened harm to Plaintiff.

While an injunction, is in and of itself, is an extraordinary remedy, Plaintiff has gone far beyond extraordinary and made an incredible request for this Court to issue an order to enjoin Defendants LeBeouf, Pillette, and Dr. Dupuis from "from participating in any proceeding of whatever nature involving the Vermilion Parish School Board and Superintendent Jerome M. Puyau"[86]  Plaintiff is effectively requesting for this Court to wade into the political thicket of a dispute between a superintendent and school board and divest duly elected members of that political body from voting on any matter involving him.  Plaintiff is attempting to hamstring the Board and remove any publicly accountable oversight of the superintendent and would strip the Board of its statutory authority to supervise and hold Plaintiff accountable for the performance of his duties as the School Board's Superintendent.

It is significant that La. R.S. 17:54(C) requires vote of two-thirds of the membership of the entire school board to take action against a superintendent. For a board of eight (8) members, that means six (6) votes would have to be obtained before action could be taken to terminate a contract. It would be impossible to get six (6) votes to do so, however, if three (3) of the eight (8) board members have been eliminated from the process pursuant to injunctive relief such as that sought by Plaintiff. If granted, therefore, then the Board could never take any disciplinary action against the Superintendent for anything that he has done or might do in the future.

 For example, if the investigation reveals anything that may warrant action (with appropriate notice and hearing), the Board would be prohibited from taking appropriate action as may be

---

[86] Proposed Temporary Restraining Order, Rec. Doc. 4-1 at p. 2.

necessary under the terms of Plaintiffs injunction.  Moreover, Plaintiffs terms would deprive many residents of Vermilion Parish from having their elected school board members from voting on *any* matter involving Plaintiff, regardless of the nature of said matter.  The harm to Defendants in granting Plaintiff's request to force three (3) members of a political body to be recused from matters involving him vastly outweighs the speculative and conclusory harm Plaintiff claims.  And, such relief would be a grave disservice to the public interest by disenfranchising voters in three (3) of the eight (8) voting districts in the Parish.

### 4. Plaintiff's requested injunctive relief is vague and fails to describe in reasonable detail the acts sought to be restrained.

Finally, Defendants submit that, as described above, Plaintiff's requested injunctive relief is vague, overly broad, and fails to describe in reasonable detail the requested conduct to be restrained. The Fifth Circuit has explained that "[t]he drafting standard [for Rule 65(d)] has been described as 'that an ordinary person reading the court's order should be able to ascertain from the document itself exactly what conduct is proscribed.'"[87]  Moreover, "The Rule was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood."[88]

The requested relief is vague and would potentially remove any and all oversight of Plaintiff in his role as superintendent.  Additionally, enjoying Defendants from "participating in any proceeding of whatever nature" involving the Board and Plaintiff could be interpreted to mean that Defendants could not even attend any school board meeting wherein Plaintiff was present.  In addition to Plaintiff's failure to satisfy any element necessary for this Court to grant injunctive relief, Plaintiff's vague and overly broad request is also grounds to deny the application.

---

[87] *Scott v. Schedler*, 826 F.3d 207, 211 (5th Cir. 2016) (citation omitted).
[88] *Id.* at 212

In sum, Plaintiff cannot demonstrate the likelihood of success on any of his claims, show imminent irreparable harm, or that the public interest and harm to Defendants weighs in favor of granting his motion.  Accordingly, Defendants respectfully request that the Court dismiss Plaintiff's application or deny it as a matter of law.

## B.   The Individually Named Defendants are Subject to Qualified Immunity

Additionally, Defendants LeBeouf, Pillette, Dr. Dupuis, and Duplechain are entitled to qualified immunity. Generally, a plaintiff must satisfy a heightened pleading standard "when a defendant raises the qualified immunity defense in a motion to dismiss."[89] "Unlike the notice pleading standard in Rule 8, the heightened pleading standard applicable in cases defended on qualified immunity grounds requires a plaintiff to plead 'with factual detail and particularity, not mere conclusory allegations.' "[90]  Further, in the context of a temporary restraining order or preliminary injunction, a plaintiff must demonstrate a likelihood of overcoming claims of qualified immunity.[91] Defendants intend to raise such a defense in this matter.

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[92] "The defense protects all government employees except the 'plainly incompetent or those who knowingly violate the law.' "[93] The protection "afforded by qualified immunity applies to the lawsuit itself, and not merely to liability, and thus the issue should be resolved as early as possible."[94] "Once a defendant raises the defense of qualified immunity it

---

[89] *Robertson v. Gautreaux*, 2017 WL 690542, at *2 (M.D. La. Feb. 21, 2017) (citing *Floyd v. City of Kenner, Louisiana*, 351 Fed.Appx. 890, 893 n. 2 (5th Cir. 2009)).

[90] *Schaefer v. Whitted*, 121 F. Supp. 3d 701, 709-10 (W.D. Tex. 2015) (citing *Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir.1999); *Schultea v. Wood*, 47 F.3d 1427, 1430 (5th Cir.1995) (en banc)).

[91] *Zinter v. Salvaggio*, 5-18-CV-00680-FB-RBF, 2018 WL 5098785, at *4 (W.D. Tex. Oct. 19, 2018); *see also*, *Patterson v. Daniels*, CIV.A. 12-1674, 2013 WL 2100546, at *21 (E.D. La. Mar. 22, 2013), *report and recommendation adopted*, CIV.A. 12-1674, 2013 WL 2100527 (E.D. La. May 14, 2013).

[92] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

[93] *Robertson*, 2017 WL 690542, at *2 (citing *Pierce v. Smith*, 117 F.3d 866, 871 (5th Cir. 1997)).

[94] *Robertson*, 2017 WL 690542, at *2 (citing *Morgan v. Hubert*, 335 Fed.Appx. 466, 472 (5th Cir. 2009)).

becomes the plaintiff's burden to show that it does not apply."[95] To demonstrate this, a plaintiff must satisfy a two-part test. First, a plaintiff "must claim that the defendant committed a constitutional violation under current law."[96] Secondly, a plaintiff "must claim that the defendant's actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of."[97] A court may use its discretion when deciding which prong of the qualified immunity analysis to address first.[98]

### 1.    Failure to State any Constitutional Violation

As explained above in greater detail, Plaintiff's conclusory arguments fail to satisfy his burden of demonstrating a constitutional violation under either the First or Fourteenth Amendment. In short, as a matter of law, Plaintiff's claims fail because he cannot show any violation of his First Amendment rights nor any deprivation of a property interest under the Fourteenth Amendment.

### 2.    No Action Objectively Contrary to Established Law

As an initial matter, while this Court has discretion on which prong to begin its analysis, Defendants respectfully submit that the Court need not address the second prong of whether the named Defendants actions were objectively unreasonable because Plaintiff cannot overcome the first prong of the qualified immunity analysis.[99]

Nevertheless, Plaintiff has failed to allege any facts to show that being placed on administrative leave pending an investigation was objectively contrary to any law, regulation, rule, or contractual provision.  Indeed, placing an employee, even a superintendent, on paid administrative leave pending an investigation is entirely reasonable.  And placing specific and limited restrictions on

---

[95] *Jones v. Lowndes County, Miss.*, 678 F.3d 344, at 351 (5th Cir.2012).
[96] *Stroman v. Ard*, 2015 WL 6680874, at *7 (M.D. La. Nov. 2, 2015) (citing *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir.2009)).
[97] *Stroman*, 2015 WL 6680874, at *7 (citing *Club Retro*, 568 F.3d at 194; *Schultea*, 47 F.3d at 1434).
[98] *Robertson*, 2017 WL 690542, at *3 (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).
[99] *See, e.g., Robertson*, 2017 WL 690542, at *5 (declining to address the second prong of qualified immunity because the plaintiff failed to plead enough facts to satisfy the first prong); *Stroman*, 2015 WL 6680874, at *8 (same).

communications *on behalf* of the Board is also reasonable during such investigation.  Importantly, Plaintiff cannot demonstrate that Defendants actions in any way were contrary to the law.

Accordingly, Defendants LeBeouf, Pillette, Dr. Dupuis, and Duplechain are entitled to qualified immunity.

## III.    CONCLUSION

For the forgoing reasons, Defendants, Laura LeBeouf, Kibbie Pillette, Dr. David Dupuis, Sara Duplechain, and the Vermilion Parish School Board respectfully submit that Plaintiff has failed to satisfy his burden of establishing the necessary elements for injunctive relief.  Therefore, Defendants respectfully request that this Court dismiss Plaintiff's Application or, in the alternative, deny as a matter of law.

Respectfully submitted, this the 20th day of September 2019,

**HAMMONDS, SILLS, ADKINS & GUICE**
2431 S. Acadian Thruway, Suite 600
Baton Rouge, LA 70808
Telephone (225) 923-3462
Facsimile (225) 923-0315

*/s/ Tyrell T. Manieri III*
**ROBERT L. HAMMONDS**
Louisiana Bar Roll No. 6484
**TYRELL T. MANIERI, III**
Louisiana Bar Roll No. 36224